IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs January 18, 2012

## STATE OF TENNESSEE v. MATTHEW C. WELKER

**Direct Appeal from the Circuit Court for Stewart County**
**No. 4-2027-CR-09     Larry J. Wallace, Judge**

_____

**No. M2011-00900-CCA-R3-CD - Filed April 17, 2012**

_____

Defendant-Appellant, Matthew C. Welker, appeals from the Stewart County Circuit Court's order revoking his probation. Welker pled guilty to residing with a minor as a sex offender, and he received a suspended sentence of two years following 90 days of confinement. On appeal, Welker claims that the trial court abused its discretion in revoking his probation and in ordering him to serve the sentence in confinement. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

William (Jake) Bradley Lockert, III, District Public Defender; Drew W. Taylor, Assistant Public Defender, for the Defendant-Appellant, Matthew C. Welker.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Dan Mitchum Alsobrooks, District Attorney General and Suzanne M. Lockert-Mash, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Background.** On January 19, 2011, a probation violation warrant and an amended probation violation warrant were issued alleging that Welker had (1) committed the new offenses of domestic assault and violation of the conditions of release from jail pending the disposition of the domestic assault charge, (2) failed to obtain employment, (3) failed to pay probation fees, and (4) failed to complete a required treatment program. A second amended warrant was issued on February 3, 2011, alleging that Welker failed to update the sex offender registry within forty-eight hours of his release from jail.

At the revocation hearing, Angelia Strickland testified that she was a state probation officer charged with overseeing Welker's probation. Welker began his probationary sentence on January 26, 2010. On January 9, 2011, Welker was arrested for domestic assault. On that day, the victim of the assault, Malisa Bybee, called Strickland and told her that Welker "was getting very aggressive." Strickland advised Bybee to call 911 if necessary, which Bybee did. Strickland went to the crime scene and witnessed Welker's arrest for the domestic assault. At the time of the revocation hearing, the domestic assault case was still pending.

Following Welker's release from jail, Strickland visited Welker's residence on January 14, 2011. She discovered Welker at the residence, where Bybee also lived, in violation of his conditions of release on the domestic assault charge. Strickland testified that Welker became aggressive, defensive, and agitated. She called the police, who arrested Welker for violating the conditions of release. Welker served ten days in jail for that offense and was released on January 24, 2011. Strickland testified that Welker did not report to her within forty-eight hours of his release and provide his new address, as required under the sex offender registry. According to Strickland, when Welker did provide a new address, it was the same address he shared with Bybee.

Strickland testified that Welker had not worked since he began probation in January 2010. He also did not provide evidence of his attempts to find a job as required every month. Although Welker had paid "sporadically" toward supervision fees related to GPS monitoring, he failed to pay $88 of those fees. Welker also failed to comply with the special terms of his probation requiring him "to attend, participate, and pay for treatment until discharged by the treatment provider or the officer." Welker was "disfavorably discharged" from the required treatment program.

On cross-examination, Strickland conceded that Welker had informed her of various physical ailments that prevented him from working. He provided her with a doctor's note on February 4, 2011. She also acknowledged that Welker's probation fees other than the GPS monitoring were waived. Strickland testified that although Welker did not report within forty-eight hours of his release from jail, he did report within seventy-two hours. She was unsure whether Welker called her during the forty-eight hours, and she acknowledged that it was possible she told him to report within seventy-two hours.

Malisa Bybee testified on behalf of Welker. She said that Welker assaulted her. She explained that the two had a "heated argument that got a little bit out of control." Later, "after things cooled down," Bybee was no longer afraid of Welker. Bybee testified that the residence belonged to Welker. Bybee was present when Welker called Strickland on January 26 following his release from jail. Welker said that Strickland told him to report the following day, on January 27. Bybee testified that Welker could not work because he

suffered from "a herniated disc or degenerative disease," "real bad diabetes," and "mental issues."

On cross-examination, Bybee testified that she had lived at the home with Welker since September 2010. It was both her home and Welker's. She described the events of the assault. She and Welker had been arguing. Welker pushed Bybee, grabbed her, and hit her on her left arm. Bybee threw a glass of water in Welker's face and went to a bedroom to get away from Welker and call 911. The "basic gist" of the 911 call was that Welker had assaulted her and that she was afraid of what he might do to her.

Following the testimony, the trial court revoked Welker's probation. It found that the State had proven the new offenses of domestic assault and a violation of the conditions of release on that charge by a preponderance of the evidence. Regarding Welker's failure to complete the required treatment program, the trial court stated:

> He was charged as a sex offender. This treatment was specifically designed for that issue, and he was discharged unfavorably from it. So the court puts a lot of weight on that factor and finds that the State has put the proof necessary to [prove] it by a preponderance of the evidence.

The court also found that Welker failed to update the sex offender registry within forty-eight hours of his release from jail. The court did not find that Welker had violated the terms of his probation by failing to obtain a job or pay probation fees. The trial court ordered Welker to serve the balance of his sentence in confinement. This timely appeal followed.

**Analysis.** Welker argues that the trial court abused its discretion in revoking his probation because the State did not prove any of the alleged probation violations by a preponderance of the evidence. He additionally argues that the trial court abused its discretion in ordering him to serve the balance of his sentence "rather than a period of short incarceration." The State responds that the trial court properly exercised its discretion in revoking Welker's probation and ordering him to serve the sentence. We agree with the State.

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the defendant has violated a condition of his or her probation. T.C.A. §§ 40-35-310, -311(e) (2009). Probation revocation "rests within the sound discretion of the trial court." State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005) (citing State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). A trial court's decision to revoke probation will be "upheld absent an abuse of discretion." State v. Beard, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005). To establish an

abuse of discretion, the defendant must show that there is no substantial evidence in the record to support the trial court's determination regarding the probation violation. Id.

Once the trial court has determined a violation of probation has occurred, it retains discretionary authority to order the defendant to: (1) serve his sentence in incarceration; (2) serve the probationary term, beginning anew; or (3) serve a probationary period that is extended for up to an additional two years. State v. Hunter, 1 S.W.3d 643, 647 (Tenn. 1999). Additionally, under Tennessee Code Annotated section 40-35-310(b), the trial court:

> [M]ay also resentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration authorized by chapter 36 of this title; provided, that the violation of the defendant's suspension of sentence is a technical one and does not involve the commission of a new offense.

T.C.A. § 40-35-310(b). The determination of the proper consequence of the probation violation embodies a separate exercise of discretion. Hunter, 1 S.W.3d at 647; State v. Reams, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007).

In this case, the trial court did not abuse its discretion by revoking Welker's probation. In order to establish a violation of probation based on the commission of a new offense, the State must offer proof by a preponderance of the evidence showing that a defendant violated the law. See State v. Catherin Vaughn, No. M2009-01166-CCA-R3-CD, 2010 WL 2432008, at *3 (Tenn. Crim. App., at Nashville, June 14, 2010) (noting that proof of a conviction is not necessary). In addition, the State "must present sufficient facts at the revocation hearing to enable the trial court to 'make a conscientious and intelligent judgment as to whether the conduct in question violated the law.'" State v. Jason L. Holley, No. M2003-01429-CCA-R3-CD, 2005 WL 2874659, at *4 (Tenn. Crim. App., at Nashville, Oct. 25, 2005) (quoting State v. Harkins, 811 S.W.2d 79, 83 n.3 (Tenn. 1991)). Malisa Bybee's testimony sufficiently established that Welker committed the offense of domestic assault.[1] Bybee testified that she lived with Welker and that he pushed her, grabbed her, and hit her. She told the 911 operator that she was afraid of Welker. Additionally, Strickland's testimony sufficiently established that Welker committed a new offense when he violated the conditions

---

[1] Domestic assault is an "assault" committed against a "domestic abuse victim." T.C.A. § 39-13-111(b) (2006). An assault occurs when a person either "(1) [i]ntentionally, knowingly, or recklessly causes bodily injury to another; (2) [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) [i]ntentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Id. § 39-13-101(a). "Domestic abuse victim" is defined to include "[a]dults . . . who live together or who have lived together." Id. § 39-13-111(a)(2).

-4-

of his release by returning to the residence he shared with Bybee, the victim of his assault. Strickland testified that she visited his residence and found him there with the victim, contrary to the conditions of his release.

Welker likewise cannot demonstrate that there was no substantial evidence in the record to support the other grounds for revocation on which the trial court relied. Strickland's testimony provided proof by a preponderance of the evidence to revoke Welker's probation based on a failure to complete a required treatment program and to properly update the sex offender registry. Strickland testified that Welker was "disfavorably discharged" from his treatment program, contrary to the requirements of his probation. She also testified that Welker reported to her outside the first forty-eight hours of his release from jail and provided an address at which he was not allowed to live. This violated the provision of Welker's probation that required him to report a change of address within forty-eight hours. The trial court, therefore, did not abuse its discretion in finding that Welker violated the conditions of probation.

Finally, the trial court did not abuse its discretion by ordering Welker to serve his sentence in custody. Incarceration was clearly one of the options available to the trial court upon finding that violations occurred. Hunter, 1 S.W.3d at 647. Welker is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE